The Honorable Shane Broadway State Senator
201 Southeast Second Street Bryant, AR 72022-4025
Dear Senator Broadway:
I am writing in response to your request for my opinion on a question arising from the following reported background facts:
 The City of Benton has created an Advertising and Promotion Commission to oversee funds collected pursuant to ACA Sec. 26-75-601 et seq. As part of promoting the city, the Commission has been working with various community partners to construct a facility which will be known as the Central Arkansas Fairplex. The Commission has determined its participation in this facility will further its objectives of advertising and promoting the City of Benton under ACA Sec. 26-75-606.
 If constructed, the facility will be situated in Benton. It will be designed to attract tourists through horse shows, events, trade shows, etc. Because of the size of the undertaking, it is necessary for the Commission to work with the City of Benton, Saline County, as well as the Saline County Fair Board. Each will have some type of contribution to the project, whether land or money, or both. Each will maintain separate ownership of the land used for the entire facility, whether it is for parking, buildings, arenas, etc. The main structure will be situated on property owned by the county, however. *Page 2 
 In order to fund the project, it will be necessary for Saline County to issue bonds. The county will have to hold an election for voter approval to do so. It is anticipated the cost of the special election will be approximately $60,000.00. At this point, the expense of a special is necessary in order to continue the development of the project.
Against this backdrop, you have posed the following question:
 May the City of Benton Advertising and Promotion Commission use AP funds to pay, whether in whole or in part, the cost of a special election under A.C.A. 26-75-606 (or any other relevant statute) as part of the AP Commission's plan to establish an arena-type facility to attract tourists to the Benton/Saline County area?
To paraphrase this question, you appear to be asking whether it would be permissible for the City of Benton Advertising and Promotion Commission (the "AP Commission") to fund a Saline County special bond election when the bond proceeds would be devoted to funding the construction and operation of the Central Arkansas Fairplex (the "Project") — a facility you characterize as "designed to attract tourists" to the area served, presumably including the City of Benton (the "City") itself. You indicate that the facility would be located primarily on land owned by Saline County (the "County"), with the City retaining ownership of certain land it would contribute to the Project.
RESPONSE
In my opinion, under the factual circumstances you have recited, the AP Commission would be barred by the terms of the Advertising and Promotion Commission Act (the "Act")[1] from using its revenues to finance a special election to approve the issuance of County bonds intended to fund development of the Project.
The Act authorizes cities and towns by ordinance to levy a tax (colloquially known as the "hamburger tax") not to exceed 3% of the gross receipts of various *Page 3 
business enterprises located within municipal corporate limits.[2] The Act provides that hamburger-tax proceeds will by ordinance be credited to an advertising and promotion fund.[3] Any municipality imposing such a tax is further obliged by ordinance to create a municipal advertising and promotion commission, [4] which, subject to statutory restrictions, is exclusively charged with determining the disposition of revenues contained in the AP fund.[5]
The powers and duties of an advertising and promotion commission are purely statutory in nature.[6] Specifically with respect to your question, the pertinent statute[7] provides as follows regarding a commission's particular powers relating to the issuance of bonds: *Page 4 
 (A) Any city of the first class that may levy and does levy a tax pursuant to this subchapter may use or pledge all or any part of the revenues derived from the tax for the purposes prescribed in this subchapter or for the operation of tourist-oriented facilities, including, but not limited to, theme parks and other family entertainment facilities or for the retirement of bonds issued for the establishment and operation of other tourist-oriented facilities, including, but not limited to, theme parks and other family entertainment facilities.
 (B) These revenues shall be used or pledged for the purposes authorized in this subsection only upon approval of the commission created pursuant to this subchapter.
 (2) Funds credited to the city advertising and promotion fund pursuant to this subchapter may be used, spent, or pledged by the commission, in addition to all other purposes prescribed in this subchapter, on and for the construction, reconstruction, repair, maintenance, improvement, equipping, and operation of public recreation facilities in the city or the county where the city is located if the city owns an interest in the center or facility, including, but not limited to, facilities constituting city parks and also for the payment of the principal of, interest on, and fees and expenses in connection with bonds as provided in this subchapter in the manner as shall be determined by the commission for the purpose of such payment.
(Emphases added.)
Under the authority just recited, so long as the City "owns an interest in" property devoted to the Project, the AP Commission in its discretion may expend hamburger tax revenues for "fees and expenses in connection with bonds as provided in this subchapter. . . ." (Emphasis added.) Your factual recitation suggests that the City would indeed "own an interest in" certain, although not all, of the real property devoted to the Project. Moreover, although I have found no authority directly on point, the costs of financing a special election to authorize the issuance of County bonds might well be classified as "fees and expenses in *Page 5 
connection with" the issuance of those bonds. However, I believe that County bonds do not fall within the category of "bonds as provided in this subchapter," meaning that the AP Commission would be foreclosed from defraying "fees and expenses" incurred in connection with the issuance of those bonds. The only bonds referenced in the Act aremunicipal bonds issued by the city that formed the advertising and promotion commission charged with expending hamburger tax funds in support of a project.[8] No provision of the Code would support the Benton AP Commission's defraying expenses incurred in authorizing and issuing a County, as distinct from a City, bond issue. Accordingly, I do not believe the proposed use of AP Commission funds would be appropriate under the Act.
Finally, you parenthetically inquire whether any other legislation might authorize the AP Commission to undertake expenditures to finance a special election for the approval of County bonds in support of the Project. In my opinion, the Act sets forth the exclusive authority for the expenditure of revenues held by the AP Commission. Given that the Act authorizes the expenditure of AP Commission funds only "in connection with" a City-bond issue, I do not believe such funds might be devoted to financing a special election to consider the issuance of County bonds.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] A.C.A. §§ 26-75-601 through -618 (Repl. 2008 Supp. 2009).
[2] A.C.A. § 26-75-602(a) (Supp. 2009). Subsection (b) of this statute further authorizes the levy of an additional 1% tax on the referenced gross receipts in a city of the first class containing a city park comprising 1,000 or more acres.
[3] A.C.A. § 26-75-604(a) (Repl. 2008).
[4] A.C.A. § 26-75-605(a) (Repl. 2008).
[5] A.C.A. § 26-75-606(a)(2)(A) (Repl. 2008).
In Op. Att'y Gen. No. 2006-207, my immediate predecessor pointed out the following tension in the Code regarding whether an AP commission or the city that imposed the tax has exclusive control over hamburger tax revenues:
 Section 26-75-607 of the Advertising and Promotion Commission Act, enacted pursuant to Acts 1969, No. 123, § 3, provides that any city of the first class, apparently with or without AP approval, may initiate a convention center project and pledge hamburger tax revenues to discharge the indebtedness. This statute is still on the books. However, this provision cannot be reconciled with A.C.A. § 26-75-606(a)(2)(A), enacted pursuant to Acts 1983, No. 821, § 1, which declares that "[t]he commission is the body that determines the use of the advertising and promotion fund," and A.C.A. § 26-75-606(b)(1)(B), enacted pursuant to Acts 1977, No. 178, § 2, which declares that hamburger tax revenues "shall be used or pledged for the purposes authorized in this subsection only upon approval of the commission created pursuant to this subchapter." In my opinion, these subsequently enacted statutes clearly control, conditioning any expenditure of hamburger tax revenues, whether directly (if authorized) or indirectly to retire bonds, upon AP commission approval.
Accord Op. Att'y Gen. No. 2008-188. I fully agree with my predecessor's analysis.
[6] See A.C.A. § 26-75-606 (Repl. 2008) (defining a commission's primary authority).
[7] A.C.A. § 26-75-606(b)(1).
[8] See, e.g., A.C.A. §§ 26-75-607(2) (Repl. 2008) (authorizing cities of the first class levying a hamburger tax and creating an advertising and promotion commission to issue bonds to finance authorized projects); 26-75-608(a), 26-75-610, 26-75-613 through -614 (Repl. 2008) (all referencing the "city" or the "municipality" as the entity issuing the authorized bonds).